IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHROMAGEN VISION, LLC,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | |
| **ROGER EICHENHOLTZ, et al.,** | : | **NO. 11-2860** |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM**

PRATTER, J.                                                                          AUGUST 27, 2012

For a case that concerns products that are supposed to promote clarity, thus far, obfuscation, mud-slinging, and defiance have been the orders of the day at least for one of the litigants. Plaintiff ChromaGen Vision LLC has filed motions for default judgment as to all four Defendants in this case. The three Corporate Defendants have never appeared in this action, but Defendant Roger Eichenholtz has appeared and opposes the motion seeking default judgment against him. The Court heard oral argument on June 6, 2012 and entertained supplemental briefing thereafter.[1]

**I.  FACTUAL[2] AND PROCEDURAL BACKGROUND**

ChromaGen Vision LLC ("CMGN") is a limited liability company organized under Delaware law whose principal place of business is in West Chester, Pennsylvania. Roger Eichenholtz, a former employee/manager/co-owner of CMGN, is a New York resident, and the

---

[1] Mr. Eichenholtz has mailed copies of "supplemental briefing" to the Court on multiple occasions, but has never filed any of this briefing on the docket, despite the Court's specific instructions to do so. Therefore, the Court will not consider this undocketed material.

[2] To the extent the Court recounts the facts, the Court relies on the Complaint and its exhibits. Plaintiff's Motions for Default Judgment fill out the story but do so largely without citation to any evidence, so any unsupported facts will be ignored.

principal of the three Corporate Defendants.

This case centers on a dispute over the intellectual property rights supporting the ChromaGen product line, which is "a system of colored filters and contact and spectacle lenses which can aid in the diagnosis and treatment of dyslexia and reading disorders." Compl. ¶ 12. The products, first marketed in Europe, came to Mr. Eichenholtz's attention in 2005, at which time he formed Defendant ChromaGen USA to market the products in the United States. On November 3, 2005, he and ChromaGen USA entered into an exclusive distributorship with Cantor & Nissel, the British manufacturer of the products.

Even with this exclusive license, Mr. Eichenholtz had difficulty capitalizing on his investment, so in 2006, he and Ted Edwards, Jr. signed an operating agreement for a new company, ChromaGen International LLC, which later became CMGN. CMGN's operating agreement provides for the designation of a board of managers to manage CMGN's business and gives that board authority to make decisions on CMGN's behalf by majority vote. It also expressly disallows any one manager from entering into any agreements independently. CMGN and its principals raised funds sufficient to purchase the U.S. patents, trademarks, and other intellectual property relating to ChromaGen products on February 15, 2007 from Cantor & Nissel. On that same date, CMGN, ChromaGen USA and Cantor & Nissel executed an agreement by which Mr. Eichenholtz and ChromaGen USA assigned all rights in the exclusive licenses held by ChromaGen USA to CMGN.[3]

On October 18, 2009, a majority of CMGN's board voted to remove Mr. Eichenholtz

---

[3] While the asset purchase agreement is attached to the Complaint, this agreement, assigning the licenses, does not appear to be attached to the pleading.

from all CMGN positions for cause and to terminate his employment agreement. He still, however, retained his membership interests in CMGN. Mr. Eichenholtz and CMGN thereafter became embroiled in a dispute over his, Mr. Edwards', and other members' respective interests in CMGN and the rights flowing therefrom. On June 11, 2010, Mr. Eichenholtz filed for bankruptcy, and on December 8, 2010, CMGN purchased all of Mr. Eichenholtz's remaining interest in CMGN from the bankruptcy trustee.[4] Judge Drain of the U.S. Bankruptcy Court for the Southern District of New York approved the sale.[5]

CMGN alleges that both before and after the sale, the ChromaGen intellectual property was its property, and that it did not at any time license any of the Defendants to use it.[6] After the sale, according to CMGN, Mr. Eichenholtz began publicizing that he or one of the Defendants retained the rights to the ChromaGen intellectual property and that he intended to use the Corporate Defendants to continue to practice the patent. For instance, when the Complaint was filed, Defendant ChromaGen USA maintained a website at www.chromagen.us, which stated that ChromaGen USA held the rights to the ChromaGen intellectual property and offered ChromaGen products for sale. The Complaint also alleges "by information and belief" that Mr. Eichenholtz tried to raise funds for use in manufacturing and/or marketing ChromaGen products from third

---

[4] CMGN notes that Mr. Eichenholtz claims that his interest at that time was a 97% interest; CMGN disputes this claim, but notes that after the bankruptcy sale, Mr. Eichenholtz's previous percentage of interest is irrelevant.

[5] The Court previously questioned Plaintiff about why the claims in this case were not in the bankruptcy court. Plaintiff stated that it tried to bring the claims there but was not allowed to do so because they arose after Mr. Eichenholtz filed for bankruptcy.

[6] CMGN attaches to its Complaint prior sworn testimony by Mr. Eichenholtz affirming this assertion.

parties after the bankruptcy sale by claiming that he or the Corporate Defendants has the right to practice the ChromaGen intellectual property.

CMGN also asserts that Mr. Eichenholtz sent CMGN's managers emails accusing them of fraud and threatening criminal charges in an attempt to interfere with CMGN's contractual relationship with the managers.[7]  Mr. Eichenholtz's activities, CMGN alleges, have harmed and continue to harm its efforts to market the unique ChromaGen products.

On April 29, 2011, CMGN filed a Complaint asserting four causes of action against the Defendants.  The first count is for declaratory judgment to clarify the ownership of the ChromaGen intellectual property.  In this count, CMGN claims that Mr. Eichenholtz has claimed ownership of the intellectual property and has repeatedly harassed and threatened CMGN as a result of this claim of ownership.  This count does not mention that the Corporate Defendants have claimed ownership of the intellectual property.

The second count is for trademark infringement and asserts that Defendants are using the ChromaGen mark in commerce.[8]  The third is for patent infringement and is similar to the trademark infringement count, in that it asserts that all Defendants offered infringing products for sale.  Count Four asserts a claim against Mr. Eichenholtz only for interference with contractual relations.  In it, CMGN claims that contractual relationships exist between it and the members of

---

[7]      CMGN also alleges that Mr. Eichenholtz has tried to interfere with CMGN's business by making false reports to government agencies concerning CMGN and associated individuals like Mr. Edwards, but none of CMGN's actual claims or causes of action seems to be based on this allegation.

[8]      There are no specific allegations stating that Maxine Morgan, Inc. or Maxine Morgan Design are using the mark in commerce, however – merely general allegations that all of the Defendants did so.

its board of managers, that Mr. Eichenholtz knew about these relationships and tried to damage them by threatening board members with civil or criminal prosecution and IRS investigation, that this "interference" was not privileged or justified, and that CMGN was harmed because it was forced to spend time and money countering Mr. Eichenholtz's allegations.

On June 8, 2011, Mr. Eichenholtz filed a *pro se* "motion to dismiss" the Complaint, in which he ignored Rule 12 standards and simply asserted his own set of facts, which generally paints Mr. Edwards as a crook and extortionist who monkeyed with the available shares of CMGN and fraudulently issued "phantom shares," lied to others about Mr. Eichenholtz's interests in the company, and fraudulently obtained Mr Eichenholtz's shares through the bankruptcy action. He also asserts that under federal tax law, the 2010 sale of his interests automatically dissolved CMGN, and that his contributed assets, including the ChromaGen intellectual property, reverted to him. He asked for a stay of the case.

A week later, Plaintiff CMGN filed a motion for a temporary restraining order, claiming that Mr. Eichenholtz had been sending emails to the doctors listed on CMGN's website telling them that CMGN is an "illegal" business. In the motion, CMGN also partially addressed Mr. Eichenholtz's "motion to dismiss," noting that Delaware limited liability company law, not federal tax law, governs when and how an LLC is dissolved and arguing that the loss of a member does not automatically dissolve an LLC. On June 22, 2011, CMGN also requested default as to the Corporate Defendants. Default was entered.

On June 28, 2011, the Court held a hearing on the TRO motion. Mr. Eichenholtz did not attend due to health issues. That same day, the Court denied his motion to dismiss without prejudice, pointing out that it was not a rule-compliant motion to dismiss and permitting him to

5

file a compliant motion to dismiss or answer by July 22, 2011.  The Court also denied his request for a stay.  On July 1, 2011, the Court granted the TRO motion, enjoining Defendants from representing to anyone that they owned the rights to the ChromaGen intellectual property (or otherwise infringing the ChromaGen trademark or patents), representing that CMGN was dissolved or does not own the rights to the ChromaGen intellectual property, and interfering in CMGN's business relationships.  In that Order, the Court instructed Defendants to file a brief to address Plaintiff's application for the entry of a preliminary injunction.

On July 8, 2011, Mr. Eichenholtz filed his brief.  In it, he asserted arguments very similar to those in his "motion to dismiss."  On July 12, 2011, the Court held another hearing, at which the parties agreed to continue the TRO restraints with some additions and to give Mr. Eichenholtz more time to secure counsel.  The Court issued an Order outlining this agreement, setting forth the TRO restraints and additional terms limiting Mr. Eichenholtz's contact with customers or officers of CMGN and instructing Mr. Eichenholtz to dismantle his ChromaGen USA website.

On July 19, 2011, Mr. Eichenholtz filed another motion to dismiss, essentially repeating the same arguments he had been asserting all along and also making arguments ostensibly with respect to subject matter jurisdiction, personal jurisdiction, and improper venue.  On September 2, 2011, CMGN filed a motion for default judgment as to the Corporate Defendants.  That motion is discussed in greater detail below.

On September 7, 2011, the Court held another hearing in the matter, at which Mr. Eichenholtz appeared *pro se*.  The parties again essentially agreed to the entry of a preliminary injunction.  On September 15, 2011, then, the Court entered a preliminary injunction, enjoining

Mr. Eichenholtz and his agents from holding themselves out as the owners of the ChromaGen intellectual property, selling or offering to sell ChromaGen products, representing to anyone that CMGN is not authorized to practice the ChromaGen intellectual property, and mentioning ChromaGen products in marketing (including websites).  On the same date, the Court also denied Mr. Eichenholtz's pending motion to dismiss and ordered him to answer the Complaint no later than October 5, 2011.  He did not do so, and CMGN requested entry of default on October 7, 2011.  Default was entered against Mr. Eichenholtz on that date.  On December 8, 2011, CMGN filed a motion for default judgment as to Mr. Eichenholtz.  Mr. Eichenholz did not respond until January 26, 2012, well past the ordered response date, but he did do so through an attorney.  CMGN has since filed several supplements to its motions, and on May 31, 2012 CMGN also filed a motion for contempt.[9]  A hearing on the motions for default judgment was held on June 6, 2012.  Shortly thereafter, Mr. Eichenholtz's attorney moved to withdraw, and the Court granted that motion.

## II.     LEGAL STANDARD

At the default judgment stage, a court should consider  "(i) whether the plaintiff will be prejudiced if the default is denied, (ii) whether the defendant has a meritorious defense; and (iii) whether the default was the product of defendant's culpable conduct." *Spurio v. Choice Security Systems, Inc.,* 880 F. Supp. 402, 404 (E.D. Pa. 1995) (citing *United States v. $55,518.05 in U.S. Currency,* 728 F.2d 192, 195 (3d Cir. 1984)).  Even if these factors all weigh in favor of granting default judgment,

---

[9]     This motion will be addressed at an August 28, 2012 hearing that has been scheduled for that purpose.

> [a]lthough the Court should accept as true the well-pleaded factual allegations of the Complaint, the Court need not accept the moving party's legal conclusions or allegations relating to the amount of damages. Consequently, before granting a default judgment, the Court must first ascertain whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.

*Chanel, Inc. v. Gordashevsky,* 558 F. Supp. 2d 532, 535 -536 (D.N.J. 2008) (internal citations and quotations omitted).

### III. DISCUSSION

The Court will discuss both default judgment motions together as to the merits of the claims against the parties.

#### A. Prejudice to the Plaintiff

CMGN argues that without default judgment, it will be severely prejudiced because multiple companies and players in the marketplace all claiming to have the exclusive rights to ChromaGen intellectual property make it much harder for CMGN to raise capital successfully and establish a presence in the marketplace. The Corporate Defendants have, of course, not responded. Mr. Eichenholtz responds that the existing preliminary injunction affords CMGN essentially all of the relief to which it would be entitled should default judgment be entered, such that continuing to move forward with the case on the merits would be no different than granting default judgment at this stage. CMGN counters that Mr. Eichenholtz is already violating the preliminary injunction and that it therefore needs the protection of a final judgment.[10] The Court finds that this factor weighs in favor of Plaintiff.

---

[10] This issue is discussed in more detail in Plaintiff's motion for contempt, but, in short, CMGN presents evidence that Mr. Eichenholtz has contacted doctors, government agencies and trade show directors and he has indeed represented that he owns the ChromaGen intellectual property and/or that CMGN does not.

### B. The Merits

The next factor is whether Defendants have a meritorious defense. This factor goes hand in hand with the analysis of the sufficiency of the complaint. CMGN appears to assert three counts against all of the Defendants and one against Mr. Eichenholtz only. However, as to the first claim for declaratory judgment, the only reference to the Corporate Defendants is in CMGN's prayer for relief; only Mr. Eichenholtz is mentioned in the actual claim itself. Thus, the Court will only consider Count 1 with respect to Mr. Eichenholtz.

#### 1. *Declaratory Judgment*

To set forth a claim for declaratory judgment, a plaintiff must show that there exists a controversy which is "definite and concrete, touching the legal relations of parties having adverse legal interests; and that it [is] real and substantial and admi[ts] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007) (internal quotations omitted). CMGN argues that it has sufficiently pleaded facts to establish that it is entitled to declaratory judgment because it has alleged that Mr. Eichenholtz has publicly stated on numerous occasions that he or one of his companies, and not CMGN, owns the ChromaGen intellectual property. It points to the documents attached to the Complaint which CMGN claims demonstrate that CMGN purchased the ChromaGen intellectual property from Cantor & Nissel, that even Mr. Eichenholtz admitted that CMGN owned these rights, and that the bankruptcy court approved the sale of Mr. Eichenholtz's interests in CMGN to CMGN.

Mr. Eichenholtz argues in opposition to Plaintiff's motion that he has a meritorious defense to this and all claims; he attaches not an affidavit or proposed answer, but a letter he

<␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀

himself wrote to his own prior attorney as evidence of his meritorious defense. He does not specify to which claim the letter presents a meritorious defense. His brief quotes the letter as saying that his "business trades as Maxine Morgan Eyewear; ChromaGen is not part of [his] current (since January 2010) business plans. *There are no business activities by myself or others for my Companies; there are no employees, Officers, Agents, Representatives, or Attorneys pursuing any business activities*." Eichenholtz Opp. at Ex. B (emphasis in original).

Whether or not this letter is even evidence which the Court could or should take into account, the Court notes that Mr. Eichenholtz also states in the same letter that "My NY Attorney is working closely with US Attorney and DOJ; when they say I can go back into the Optical and Healthcare markets with ChromaGen, I will – Not Before – *There is no current activity*." *See id.* (emphasis in original). Thus, this letter seems to show two things. First, it suggests that perhaps, if his companies are stagnant and have been for years, Mr. Eichenholtz is acting alone and not on behalf of his corporate entities as he infringes the ChromaGen intellectual property (this is partly contradicted, however, by the ChromaGen USA website, which has since been disabled as per the Court's Order). Second, it suggests that although Mr. Eichenholtz believes he is not violating the Court's Orders right now, he does still seem to contend, without explicitly saying so, that he has the rights to the ChromaGen intellectual property and expects to practice it in the future.

This assertion of his ownership would support CMGN's claim that there is an active controversy as to the ownership of the ChromaGen intellectual property. On the other hand, to the extent that Mr. Eichenholtz does assert he has ownership, either because the bankruptcy sale was supposedly fraudulent or because Mr. Edwards purportedly fraudulently diluted his ownership interests and muscled him out of the business or because CMGN was allegedly

10

dissolved and the intellectual property reverted back to his ownership, that ownership, if genuine, would clearly defeat not just the declaratory judgment claim but the infringement claims as well.[11]

It is not enough for a claimed meritorious defense to have facial validity; a court must also consider its substantive sufficiency. *See Harad v. Aetna Cas. & Surety Co.*, 839 F.2d 979, 982 (3d Cir. 1988). Here, the allegations regarding the fraudulent nature of the bankruptcy sale would be properly addressed in an appeal of the bankruptcy court order, not in this court in this action. The allegations of Mr. Edwards's fraud prior to the sale would seem to be similarly unavailing, as the bankruptcy sale of Mr. Eichenholtz's interests – whether those interests were 97% or something less in CMGN – would make those arguments moot. Finally, as to the claim that CMGN dissolved at some point and that the intellectual property reverted back to Mr. Eichenholtz, the only evidence that Mr. Eichenholtz points to in support of this scenario is the fact that federal tax law treats an LLC like a partnership; however, he has provided no evidence or case law (and, certainly, the Court has located none) to support that federal tax law's treatment of an LLC somehow trumps state law governing corporations.

        2.        Trademark and Patent Infringement

To set forth a claim of trademark infringement, a plaintiff must show that "(1) the mark is valid and legally protectable, (2) it owns the mark, and (3) the defendant's use of the mark is

---

[11] Because the argument in support of Mr. Eichenholtz's claim that he has a meritorious defense only mentions his assertion that ChromaGen products are not part of his current business and have not been for a few years, it is a bit unclear whether, for purposes of legal arguments, he is still claiming that he owns the intellectual property. Every other filing in this case and the statements he has made to third parties, which CMGN has attached to its replies and motion for contempt, suggest that he still is claiming he owns the intellectual property.

likely to create confusion concerning the origin of goods and services." *E.T. Brown Drug Co. v. Cococare Prods.*, 538 F.3d 185, 191 (3d Cir. 2008).  To support the first two elements, CMGN presents the Combined Declaration of Use and Incontestability Under Sections 8 & 15 filed with the U.S. Patent and Trademark Office on July 15, 2008, which lists the owner of the mark as CMGN.  The same arguments outlined above regarding Mr. Eichenholtz's claims that the bankruptcy sale was fraudulent, that Mr. Edwards cheated him, and that CMGN dissolved apply here, as does the reasoning undercutting those asserted defenses.

      Mr. Eichenholtz also asserts that ChromaGen is not part of his "current" business plan and has not been since January 2010.  This assertion would be a complete defense as to the third prong, except that the Court can conclude from the evidence that this claim by Mr. Eichenholtz is not true.  Mr. Eichenholtz has, though his company ChromaGen USA, operated a website using the ChromaGen mark as late as last summer.

      The two entities which are not directly implicated by CMGN's evidence are Maxine Morgan, Inc. and Maxine Morgan Design.  Aside from general allegations, the only evidence of these specific entities' infringement put forth by CMGN are promotional materials and an executive summary of the companies operating under the trade name Maxine Morgan Eyewear.  These materials appear to be from some time in 2010, prior to the bankruptcy sale – indeed, one of the four companies listed as operating under the Maxine Morgan Eyewear trade name alongside the three Corporate Defendants is CMGN.  Moreover, in the executive summary itself, Maxine Morgan Design is described as offering for sale facial cosmetics and apparel, not ChromaGen intellectual property.  On the other hand, CMGN does offer, in conjunction with its reply to Mr. Eichenholtz's Opposition to its Motion for Default Judgment, evidence that Mr.

Eichenholtz has used the Maxine Morgan Eyewear trade name when claiming ownership in the ChromaGen intellectual property or claiming that CMGN does not own the ChromaGen intellectual property. This evidence, however, is of post-complaint actions. Even if the post-complaint statements could be attributed to Maxine Morgan Design and/or Maxine Morgan, Inc., which is unclear, those post-complaint statements do not prove that those entities committed any of the wrongful conduct described in the Complaint.

Plaintiff also argues that because Maxine Morgan Design and Maxine Morgan, Inc. are not independent from Mr. Eichenholtz himself, they, too, should be enjoined based on his actions in promoting the trade name Maxine Morgan Eyewear. It argues that the test for piercing the corporate veil is met in this case.

However, Plaintiff gets the law backwards. Veil-piercing allows a court to ignore the corporate form in favor of holding the individual behind the corporation liable, not the other way around. To quote the very case cited by the Plaintiff in favor of this argument, "[w]here a corporation operates as a mere façade for the operations of a dominant shareholder, the dominating shareholder may be held liable for the corporation's inequitable conduct perpetrated through the use of the corporate form's protections." *Newcrete Products v. City of Wilkes-Barre*, 37 A.3d 7, 12 (Pa. Cmwlth. 2012). Thus, whether or not the corporate veil may be pierced is irrelevant. To hold that an alter ego corporation could be held liable for the acts of its principal without some evidence that the principal was acting on that corporation's behalf would effectively turn corporate law on its head. For these reasons, then, the Court will not grant default judgment as to Maxine Morgan Design and Maxine Morgan, Inc. on this count.

To show patent infringement, a plaintiff must show that the defendant has made, used,

offered to sell, or sold patented products without the authority to do so. 35 U.S.C. § 271. The same analysis applied to the trademark infringement claim applies here. Thus, CMGN has carried its burden as to Mr. Eichenholtz and ChromaGen USA, but not as to Maxine Morgan Design or Maxine Morgan, Inc.

### 3.    *Intentional Interference with Contractual Relations*

As an initial matter, it is unclear which state's law applies with respect to this claim; CMGN seems to assume, without analysis, that Pennsylvania law applies. Other potential candidates are New York (Mr. Eichenholtz's state of residence) and Delaware (whose law governs the operating agreement Mr. Eichenholtz allegedly interfered with). Under any of these three states' laws, "One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." Restatement (2d) Torts § 766; *see Walnut Street Associates, Inc. v. Brokerage Concepts, Inc.*, 20 A.3d 468, 475 (Pa. 2011) (citing *Adler, Barish, Daniels, Levin, and Creskoff v. Epstein*, 393 A.2d 1175 (Pa. 1978) for its reliance on § 766); *Grunstein v. Silva*, C.A. No. 3932, 2009 WL 4698541, at *16 (Del. Ch. 2009) (citing § 766 and noting that "Delaware generally follows the Restatement with respect to tortious interference"); *White Plains Coat & Apron Co. v. Cintas Corp.*, 867 N.E.2d 381, 383 (N.Y. 2007) (relying on § 766).

Despite CMGN's concern with Mr. Eichenholtz contacting physicians and others, the interference claim against him is set forth as a claim that he "terrorized" CMGN Board members with the goal of causing them to breach their contracts with CMGN. However, at no point does

CMGN allege that any of the board members contacted by Mr. Eichenholtz actually breached or failed to perform their contracts. CMGN asserts that it can seek damages other than those resulting from a breach in bringing this claim, but such an argument misses the point. There simply is no tort here without evidence that Mr. Eichenholtz actually interfered with the contracts in question and caused a breach of those contracts. While Mr. Eichenholtz's conduct may be actionable under some other theory (e.g., defamation), it is not actionable under this particular tort and CMGN has not set forth a claim for any other tort. Thus, the Court will not enter default judgment as to this claim.

   **C.** **Excusable Neglect**

The final factor in the default judgment analysis is whether the default is the result of a defendant's culpable conduct. The Corporate Defendants have never appeared in this action despite the fact that their principal, Mr. Eichenholtz, clearly has had notice and was instructed by the Court that corporations cannot appear *pro se*. There can be no excusable neglect argument for them. Mr. Eichenholtz contends that his failure to timely answer was due to his exhaustive search for counsel. He points to a case in which a two-day delay in answering was held to be excusable neglect. *See Spurio v. Choice Sec. Sys.*, 880 F. Supp. 402 (E.D. Pa. 1995). However, Mr. Eichenholtz was fully aware of the answer deadline, had been given multiple extensions after filing multiple meritless motions to dismiss, did not petition the Court for a further extension of that answer deadline, and did not even respond to the motion for default judgment until well after the response deadline to that motion had passed. Indeed, he has not even attached as an exhibit to his opposition brief a proposed answer. This is certainly culpable conduct and not excusable neglect.

### D. Relief

CMGN seeks declaratory and injunctive relief, as well as attorney's fees and costs. As the Court found when issuing the preliminary injunction in this case, the harm to CMGN is not purely economic; Mr. Eichenholtz and ChromaGen USA's conduct creates the possibility of confusion and the risk that CMGN will suffer loss of control of reputation, loss of trade, and loss of goodwill with respect to the intellectual property at issue. *See Opticians*, *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195-96 (3d Cir.1990). Some of the injunctive relief sought by CMGN goes beyond what is required to remedy the violations of intellectual property law set forth by CMGN, however. In particular, CMGN asks the Court to enjoin Mr. Eichenholtz and his agents from: (1) representing to any party that CMGN has been dissolved by operation of law, is "illegal," or does not exist; (2) engaging in communication with known officers, directors, members, employees, or agents of CMGN; and (3) making any derogatory statements about CMGN to anyone he knows or believes is in a contractual relationship with CMGN. They also seek discovery of all derogatory statements he has made about CMGN to anyone he knows or believes is in a contractual relationship with CMGN.

These activities do not bear a clear relationship to CMGN's intellectual property infringement and declaratory relief claims. Even if the Court had found that CMGN had adequately set forth its contractual interference claims against Mr. Eichenholtz–which the Court has not–CMGN's contractual inference claim also would not provide grounds for enjoining such conduct as the conduct does not appear to relate or cause injury to CMGN's contractual relationship with its Board. Consistent with the Court's equitable powers, the Court will not enjoin such conduct. This, of course, does not mean Mr. Eichenholtz may escape financial

16

responsibility for actionable conduct.

The Court will grant the remaining injunctive and declaratory relief requested. Specifically, the Court will clarify the ownership of the ChromaGen intellectual property at issue and restrain Mr. Eichenholtz, his agents, and Defendant ChromaGen USA from holding themselves out as authorized to sell, offer for sale, or practice the ChromaGen intellectual property; from selling, offering to sell, authorizing others to sell, or otherwise practicing the ChromaGen intellectual property; and from representing to any party that ChromaGen Vision LLC is not authorized to practice the ChromaGen intellectual property, including but not limited to any representation that ChromaGen Vision LLC is not the owner of the ChromaGen intellectual property or that any other.

As to attorney's fees and costs, CMGN has not provided any evidence regarding the amount expended on this matter or submitted any argument as to why that amount is reasonable. Therefore, although the Court will permanently enjoin Mr. Eichenholtz from engaging in activity that will cause the ills sought to be avoided by declaratory judgment and infringement claims, the Court cannot and will not at this time rule on any award of attorney's fees. If Plaintiff intends to seek a costs and fees award it must make a timely separate filing.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part each of the motions for default judgment. An appropriate Order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge